IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

DAVID WILSON,                          )
                                       )
            Plaintiff,                 )
                                       )
v.                                     )        CASE NO.  2:16-CV-364-WKW
                                       )
JEFFERSON S. DUNN, *et al.*,           )
                                       )
            Defendants.                )
                                       )

## MEMORANDUM OPINION AND ORDER

## I. INTRODUCTION

Plaintiff David Wilson is an Alabama death-row inmate in the custody of the Alabama Department of Corrections ("ADOC").[1]  In May 2016, Wilson filed a complaint under 42 U.S.C. § 1983, asserting six causes of action against Defendants for violations of his constitutional rights.[2]  (Doc. # 1.)

This matter is before the court on Defendants' Motion to Dismiss, pursuant to Fed. R. Civ. P. 12(b) (6), for Wilson's failure to state a claim upon which relief can

---

[1] Presently, Wilson has no execution date.

[2] On February 28, 2017, Wilson filed a First Amended Complaint (Doc. # 24), which reiterates the same six claims contained in his original Complaint.

be granted.  (Doc. # 26.)  The motion has been fully briefed and is ripe for review.

Defendants' motion is due to be granted in part and denied in part.

## A.    Wilson's Capital Litigation History

On January 8, 2008, Wilson was convicted of two counts of capital murder, for murdering Dewey Walker during the course of robbery and burglary in April 2004.  Wilson attacked Walker with a baseball bat and strangled him with an extension cord, inflicting deadly injuries, including broken bones, fractures, cuts, and abrasions, among others.  *See State v. Wilson*, 38-CC-2004-1120-1121 (Sentencing Order at 2) (Houston County Cir. Ct. Jan. 8, 2008).  By a vote of 10-2, the jury recommended that Wilson receive a death sentence.  The trial court accepted that recommendation and sentenced Wilson to death.  *Id.* at 1, 6.

The Alabama Court of Criminal Appeals affirmed after remand, *Wilson v. State*, 142 So. 3d 732 (Ala. Crim. App. 2012).  Both the Alabama Supreme Court and U. S. Supreme Court denied certiorari.  *See Ex parte Wilson*, No. 1111254 (Ala. Sept. 20, 2013); *Wilson v. Alabama*, 134 S. Ct. 2290 (2014) (mem.).

On September 19, 2014, Wilson filed a petition in the trial court for collateral relief pursuant to Rule 32 of the Alabama Rules of Criminal Procedure.    That petition remains pending in the Houston County Circuit Court.  Wilson has not initiated federal habeas proceedings.

### B.  Wilson's Claims

Wilson claims that, (1) Alabama's method of execution violates his rights under the First, Eighth, and Fourteenth Amendments to the U. S. Constitution; (2) Defendants' consciousness assessment employed after the administration of the first drug is constitutionally inadequate; (3) Defendants' policy prohibiting an inmate's counsel witnessing his execution from possessing or having access to a cell phone during the execution violates his First, Eighth, and Fourteenth Amendment rights; (4) Defendants' veil of secrecy surrounding Alabama's method of execution violates his Fourteenth Amendment due process rights; (5) the ADOC's material deviation from its execution protocol violates his right to equal protection under the Fourteenth Amendment; and (6) the lack of oversight of the ADOC's execution protocol violates Article III, Section 43 of the Alabama Constitution.  (Doc. # 24.)

## II.  STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U. S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U. S. 544, 570 (2007)).  "Determining whether a complaint states a plausible claim for relief

[is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 663 (alteration in original) (citation omitted).

The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U. S. at 678. Conclusory allegations that are merely "conceivable" and fail to rise "above the speculative level" are insufficient to meet the plausibility standard. *Twombly*, 550 U. S. at 555, 570. This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678. Indeed, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.*

## III. DISCUSSION

### A.    Eighth Amendment Method-of-Execution Claim

To state an Eighth Amendment claim that survives a motion to dismiss, Wilson must plead plausible facts concerning the "substantive elements of an Eighth Amendment method-of-execution claim." *Glossip v. Gross*, 135 S. Ct. 2726, 2739 (2015). Critical here, Wilson must plausibly (1) plead "that [Alabama's] use of a massive dose of midazolam in its execution protocol entails a substantial risk of severe pain," and (2) "identify a known and available alternative method of execution that entails a lesser risk of pain, a requirement of all Eighth Amendment

method-of-execution claims." *Id.* at 2731 (citing *Baze v. Rees*, 553 U. S. 35, 61 (2008)).

"[B]ecause it is settled that capital punishment is constitutional, 'it necessarily follows that there must be a constitutional means of carrying it out.'" *Glossip*, 135 S. Ct. at 2732–33 (quoting *Baze*, 553 U. S. at 47) (alteration omitted). Moreover, "because some risk of pain is inherent in any method of execution[,] . . . the Constitution does not require the avoidance of all risk of pain." *Id.* at 2733 (citation omitted). "Instead, to prevail on an Eighth Amendment challenge to a lethal injection protocol, a condemned inmate must establish an objectively intolerable risk of harm that prevents prison officials from pleading that they were subjectively blameless for purposes of the Eighth Amendment." *Chavez v. Fla. SP Warden*, 742 F.3d 1267, 1271 (11th Cir. 2014).

> **1.** *whether Alabama's execution protocol entails a substantial risk of severe pain*

To meet the first prong of the *Baze/Glossip* test, Wilson must plausibly plead, "that [Alabama's] use of a massive dose of midazolam in its execution protocol entails a substantial risk of severe pain." *Glossip*, 135 S. Ct. at 2739.

Wilson alleges that midazolam will not anesthetize him, regardless of the dose, because it is not used clinically as a sole anesthetic. (Doc. # 24 at 10-11.) In support of that claim, Wilson relies, in part, on the report of Michael Froelich, M.D., M.S., an anesthesiologist, who states that midazolam, a benzodiazepine, is used

almost exclusively as an anxiolytic, "to take off the edge" for patients being prepared for surgery. (Doc. # 24-3 at 1.) Per Dr. Froelich, midazolam is not an anesthetic and is used only as an anesthetic adjunct. (*Id.*) Dr. Froelich also states that, while midazolam can sedate one to the point where he would not react to Defendants' consciousness assessment, he could still feel the noxious stimuli of the paralytic and potassium chloride. (*Id.* at 2.)[3]

Additionally, Wilson supports his claim with reports from recent executions employing 500 milligrams of midazolam as evidence of its ineffectiveness as an anesthetic. These reported events are summarized below:

### a. Paul Howell

According to an Ohio district court, in January 2014, Howell was executed in Florida with a drug cocktail of 500 milligrams of midazolam, administered in two separate injections of 250 milligrams each, followed by 200 milligrams of vercuronium bromide, given in two separate 100-milligram injections, followed by

---

[3] Wilson also relies on a recent decision by the Sixth Circuit Court of Appeals (which referred to the Alabama executions in 2016 of Christopher Brooks and Robert Bert Smith) that upheld a district court's entry of a preliminary injunction staying all executions in Ohio because the state's use of midazolam in a three-drug protocol violates the Eighth Amendment. *In re Ohio Execution Protocol Litig.*, No. 17-3076, 2017 WL 1279282 at *2 (6th Cir. Apr. 6, 2017). But this panel decision was vacated, and the case was reheard *en banc*. *See In Re: Ohio Execution Protocol Litig.*, 855 F.3d 702 (6th Cir. 2017). Following that hearing, on June 28, 2017, the Sixth Circuit held that the plaintiffs had failed to demonstrate a likelihood of success on their claims that Ohio's three-drug execution protocol was unconstitutional. Contemporaneously, the Sixth Circuit also vacated the district court's January 26, 2017 preliminary injunction staying all executions in Ohio. *See In Re: Ohio Execution Protocol,* 860 F.3d 881 (6th Cir. 2017). Thus, the earlier panel decision is noted only because Wilson relied on it.

240 milliequivalents of potassium chloride. *See In re Ohio Execution Protocol Litig.*, 2:11-cv-01016-EAS-MRM, Doc. # 948 at 23 (S.D. Ohio Jan. 26, 2017). A witness to the execution reported seeing Howell open his eyes after the consciousness check. *Id.*

Wilson states that on January 4, 2017, Florida changed its lethal injection protocol to replace midazolam with etomidate, which is not a benzodiazepine, as the first drug to be administered in the protocol. *See id.*

### b.    Christopher Brooks

Brooks was executed in January 2016 in Alabama. Brooks's execution was the first one in Alabama where midazolam was used in the lethal-injection cocktail. Wilson states that a witness to the Brooks execution described seeing his left eye open after the consciousness assessment. Per the witness's report, after Brooks's left eye opened, it stayed open throughout the remainder of the execution, and no ADOC official took any action when his eye opened.

Wilson contends that this eye-opening event indicates that Brooks was not insensate before the paralytic was injected and that if the paralytic had been injected properly and performed its function, Brooks would have been unable to open his eye. Wilson further notes that this occurrence in the Brooks execution indicates that Defendants have no mechanism in place for continuing to observe and assess a condemned inmate's consciousness level and taking action when it becomes

apparent that an inmate is conscious or has regained consciousness during the execution.

### c.      Robert Bert Smith

Smith was executed in December 2016 in Alabama.  His execution was the second in Alabama in which midazolam was the first drug used in the protocol.

Wilson claims that witnesses to Smith's execution, including news reporter Kent Faulk, observed that it did not go smoothly, and that for thirteen minutes, Smith heaved, coughed, and moved his arms and hands, including after each of two consciousness assessments.  Wilson alleges that ADOC officials took no action and proceeded with the execution. Wilson also asserts that Smith's movements and reactions indicate that he was neither adequately anesthetized nor unconscious when the second and third drugs were administered.

### d.      Ricky Gray

Gray was executed in January 2017 in Virginia with a three-drug protocol using midazolam as the first drug.  Wilson states that newspaper accounts of Gray's execution reported that the execution took longer than normal and that Gray was observed having labored breathing after the midazolam was injected.   These accounts are consistent with the eyewitness reports from the other executions noted above where midazolam was the first drug given in the lethal-injection cocktail.

Returning to Defendants' motion to dismiss, Defendants submit that Wilson has failed to state an Eighth Amendment method-of-execution claim that meets the *Baze/Glossip* test. Defendants note that this claim is virtually identical to the Eighth Amendment claim in the Midazolam Litigation that was dismissed for failure to state a claim. Defendants argue that, since this claim in the Midazolam Litigation was dismissed, Wilson's claim also should be dismissed. However, the legal landscape has changed since Defendants made this argument on March 16, 2017. (Doc. # 26.)

In September 2017, the Eleventh Circuit reversed this court's dismissal and remanded for further proceedings, concluding that this court erred by dismissing the complaints pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim for which relief can be granted. Specifically, the Eleventh Circuit concluded that the complaints did not present a time-barred "general challenge" to Alabama's three-drug lethal injection protocol. *See West v. Warden,* 869 F.3d 1289 (11th Cir. 2017).

Defendants further contend that Wilson failed to meet the threshold requirement of alleging that the use of midazolam as the first drug in Alabama's lethal injection protocol is "sure or very likely to cause serious illness and needless suffering." *Baze*, 553 U. S. at 50. Defendants argue that Wilson failed to allege any real-world study, data, literature, testing, pharmacological information, practical clinical experience, or facts of any kind that would show that it is sure or very likely

that an inmate would not be fully unconscious after the administration of 500 milligrams of midazolam and would remain unconscious throughout the execution.

Contrary to Defendants' argument that Wilson's claim is conclusory and unsupported, Wilson supports his claim with the report of anesthesiologist Michael Froelich, M.D., M.S., which includes both pharmacological information and his practical clinical experience with midazolam. Froelich states that midazolam is not an anesthetic and is used only as an anesthetic adjunct and that while midazolam can sedate one to the point where he would not react to Defendants' consciousness assessment, he could still feel the noxious stimuli of the paralytic and potassium chloride. (*See* Doc. # 24-3.)

Though Wilson is not required to try his claim in the pleadings, he has supported his claim with pharmacological and practical clinical information, and he has alleged facts, albeit hearsay at this point, that at least call into question whether it is sure or very likely that an inmate would not be fully unconscious after the administration of 500 milligrams of midazolam and would remain unconscious throughout the execution. Because the court must accept Wilson's factual allegations as true at this stage of the litigation, he has alleged a plausible claim that there is a "sure or very likely" risk of severe pain. Proving this claim is a different matter, but for purposes of analyzing a Rule 12(b)(6) motion, Wilson has met the first prong of the *Baze/Glossip* test.

**2.     *whether there is an alternative method of execution***

To satisfy the second prong of the *Baze/Glossip* test, Wilson must "identify a known and available alternative method of execution that entails a lesser risk of pain . . . ." *Glossip*, 135 S. Ct. at 2731 (citing *Baze*, 553 U. S. at 61).  Wilson proposed four alternative methods of execution, three of which are one-drug protocols using either pentobarbital/compounded pentobarbital, sodium thiopental, or midazolam; the fourth alternative is an execution using nitrogen asphyxiation.  The four alternatives are examined below:

**a.     *Alternative # 1 – Pentobarbital/Compounded Pentobarbital***

Wilson claims that since January 1, 2014, over forty executions have been performed nationwide "using a single large dose of pentobarbital, making it the most common method of execution in the United States" (Doc. # 24 at 31), and that several states, including Colorado, Georgia, Mississippi, Missouri, Ohio, Oklahoma, Pennsylvania, South Dakota, and Texas "have used or intend to use compounded pentobarbital for executions." *Id.*  Wilson further states that of single-drug executions in the United States, compounded pentobarbital is the most frequently used. *Id.*

In recent years, commercially manufactured pentobarbital has become more difficult for states' departments of corrections to obtain for use in lethal-injection executions in the United States.  In a similar § 1983 method-of-execution case

containing an Eighth Amendment claim virtually identical to Wilson's Eighth Amendment claim, this court found that the ADOC's supply of commercially manufactured pentobarbital, Nembutal®, expired around November 2013.  *See Arthur v. Dunn*, No. 2:11-CV-438-WKW, (Doc. # 359 at 17, ¶ 1), 2016 WL 1551475, at *1 (M.D. Ala. Apr. 15, 2016), appeal dismissed (July 12, 2016), *aff'd sub nom. Arthur v. Comm'r, Ala. Dep't of Corr.*, 840 F.3d 1268 (11th Cir. 2016), *cert. denied sub nom. Arthur v. Dunn*, 137 S. Ct. 725 (2017), *reh'g denied*, 137 S. Ct. 1838 (2017).  As of the last evidentiary hearing (in *Arthur*, on January 12, 2016), the ADOC has been unable to obtain commercially manufactured pentobarbital for use in executions.  The Eleventh Circuit confirmed this fact:  "As this Court has noted many times, and the Supreme Court reiterated in *Glossip*, both pentobarbital and sodium thiopental are unavailable for use in executions as a result of the advocacy of death penalty opponents."  *Grayson v. Warden,* 672 F. App'x 956, 964 (11th Cir. 2016).

Wilson's proposed alternative concerns "compounded pentobarbital" rather than Nembutal®, the commercially manufactured pentobarbital.  In support of his claim that compounded pentobarbital is a viable alternative execution method, Wilson relies on the deposition of Daniel Buffington, Pharm.D., taken in the

Midazolam Litigation.[4]  *See* Exhibit G to Wilson's Amended Complaint (Doc. # 24-7).  In relevant part, Buffington states that (1) in pharmacy school, all pharmacists are trained to compound drugs (*id*. at 93); (2) he has compounded pentobarbital previously by reconstituting it from its powder form and could produce it from raw ingredients without the powder because "[i]t's not a difficult recipe" to do (*id*. at 94-95); and (3) the State of Alabama had not asked him to produce compounded pentobarbital for use in executions or to locate compounding pharmacists who would be willing to do so (*id*. at 95-96).  Buffington further testified that he knows pharmacists who have expressed their willingness to provide compounded pentobarbital for use in executions and that, with their permission, he would provide their names to the ADOC and the Alabama Attorney General's office.  (*Id*. at 101-02.)

Defendants submit that Wilson has failed to satisfy this alternative method-of-execution prong of the *Baze/Glossip* test because compounded pentobarbital is not readily available to the ADOC, as was established in *Arthur v. Dunn*, *supra*, and in the Midazolam Litigation, *Grayson v. Dunn*, No. 2:12-cv-0316-WKW (M.D. Ala. Oct. 31, 2016) (Doc. # 192).  Defendants further note that Wilson's claim is defective because he did not provide a source for the compounded pentobarbital.

---

[4]    *See Grayson v. Dunn,* No. 2:12-cv-0316-WKW (M.D. Ala. 2012).  Buffington's deposition is Exhibit D to Plaintiffs' Response to Defendants' Motion for Summary Judgment (Doc. # 145-4.)

Defendants' reliance on the findings in *Arthur* and the Midazolam Litigation concerning the availability of compounded pentobarbital to the ADOC is inappropriate and misplaced. The findings in *Arthur* were made post-trial, nearly two years ago, and the findings in the Midazolam Litigation were made on a fully briefed motion for summary judgment.[5] Wilson's case is still in the pleading stage; thus, there has been no discovery. Wilson is not required to prove his claim at the time he files his complaint. Wilson is simply required to plead that the alternative execution method he proposes is feasible, readily implemented, known and available. The word "feasible" means "capable of being done, accomplished or carried out; possible, practicable."[6]

Based on the testimony of pharmacist Daniel Buffington referenced above, Wilson has made a plausible claim that compounded pentobarbital is a feasible alternative method of execution. The plausibility of this claim is enhanced based on the fact, of which the court takes judicial notice, that three other states (Georgia, Missouri, and Texas) routinely conduct executions with compounded pentobarbital.[7]

---

[5] Moreover, the Eleventh Circuit reversed the summary judgment for Defendants in the Midazolam Litigation and remanded for further proceedings. *See Grayson v. Warden*, No. 16-16876 (11th Cir. Sept. 1, 2017).

[6] "feasible, adj.". OED Online. April 2017. Oxford University Press. http://www.oed.com/view/Entry/68798?redirected From=feasible (accessed September 27, 2017).

[7] Considering only the executions conducted by the State of Texas for the past few years, per the Death Penalty Information Center (DPIC) website, Texas conducted 10 executions in 2014 with pentobarbital, *see* https://deathpenaltyinfo.org/execution-list-2014. Texas conducted 14

The court's finding in 2016 in *Arthur* that compounded pentobarbital is not readily available to the ADOC was based on the evidence presented in that case. This finding in 2016 should not be read to say that compounded pentobarbital will never be readily available to the ADOC for use in executions. Circumstances change. Discovery in Wilson's case may establish that compounded pentobarbital has since become available to the ADOC. Logic dictates that if Georgia, Missouri, and Texas can obtain compounded pentobarbital for use in executions, theoretically, Alabama should also be able to obtain compounded pentobarbital for use in executions; thus, it follows that compounded pentobarbital can be pleaded as a feasible alternative for an execution in Alabama.

### 2.     *Alternative # 2 – Sodium Thiopental*

Wilson claims that sodium thiopental is another feasible option for use in a single-drug execution protocol, as it was the primary drug used in three-drug protocols for over a decade, in a dosage that experts stated would cause death without the need of a paralytic or potassium chloride. (Doc. # 24 at ¶ 113.) Wilson acknowledges that sodium thiopental is no longer manufactured in the United States;

---

executions in 2015 with pentobarbital, *see* https://deathpenaltyinfo.org/execution-list-2015; Texas conducted 7 executions in 2016 with pentobarbital, *see* https://deathpenaltyinfo.org/execution-list-2016; and, to date, Texas has conducted 7 executions in 2017 with pentobarbital, *see* https://deathpenaltyinfo.org/execution-list-2017. (last visited November 17, 2017.) While the DPIC reports that these executions were performed with pentobarbital, since commercially manufactured pentobarbital is no longer legally available in the United States, the court presumes that these executions were performed with compounded pentobarbital.

however, he points to the testimony of pharmacist Daniel Buffington that sodium thiopental could be compounded, that it would not be difficult to compound sodium thiopental, and that given the proper facilities, he could compound it himself. (Buffington Depo., Doc. # 24-7, at 107-08.)

Defendants submit that, because sodium thiopental is no longer legally available in the United States, it, like pentobarbital, is similarly unavailable. Defendants further assert that Wilson's reference to Nebraska's attempts to purchase sodium thiopental from India, and his reference to correspondence from various states' departments of corrections concerning their belief that sodium thiopental can be legally imported are insufficient to state a plausible claim.

Based on the expert testimony referenced above of pharmacist Daniel Buffington in the Midazolam Litigation, Wilson has plausibly pleaded that sodium thiopental is a feasible alternative method of execution. Proving it is an entirely different matter, but it is plausibly pleaded.[8]

### 3.   *Alternative # 3 – Midazolam*

Wilson claims that another alternative method of execution is "a one-drug protocol consisting of a large initial dose of midazolam (2,500 mg to 3,750 mg), followed by a continuous infusion until death." (Doc. # 24 at ¶ 117.)  As support for

---

[8] Since Buffington was deposed in March 2016, after Arthur's trial in January 2016, Arthur did not have the benefit of Buffington's testimony to support his claim that sodium thiopental, albeit produced by compounding, was a feasible alternative method of execution.

this claim, Wilson relies on a finding by a District Court in Oklahoma in *Glossip* that a 500-mg dose of midazolam will likely cause death in under an hour,[9] and the testimony of Randall L. Tackett, Ph.D. (Exhibit I to Doc. # 24), one of plaintiffs' experts in the Midazolam Litigation, who opined that "a 2,500 mg to 3,750 mg bolus of midazolam, followed by a continuous infusion, would eventually suppress the inmate's breathing, resulting in death." (Doc. # 24 at ¶ 119.) Given that Defendants' current execution protocol includes midazolam as the first drug administered and that Alabama conducted two executions in 2016 with the use of midazolam, Wilson asserts that midazolam is readily available to the Defendants.

Based on the expert testimony on which Wilson relies, plus the fact that midazolam is already a component in the ADOC's execution protocol, Wilson has plausibly pleaded that a massive dose of midazolam in a one-drug protocol, followed by continuous infusion until death, is a feasible alternative method of execution.

### 4. *Alternative # 4 – Nitrogen Asphyxiation*

Wilson further proposes an alternative method of execution with pure nitrogen gas, which he claims would be a quick, painless death. (Doc. # 24 at 36.) Procedurally, Wilson suggests this execution method could be accomplished by first administering an anxiolytic, such as midazolam, and then delivering pure nitrogen

---

[9] *Glossip*, 135 S. Ct. at 2742 n.4.

gas using a mask, "rendering the inmate unconscious within seconds and painlessly dead within minutes." *Id.* at ¶ 123.

Defendants counter that this "alternative" is no true alternative for several reasons. First, nitrogen asphyxiation is not a known and available alternative that is feasible and can be readily implemented because currently it is not permitted under Alabama law. Defendants point out that Alabama Code § 15-18-82(a) (1975) provides for one method of execution: lethal injection, with the exception that under certain conditions not applicable here, an inmate may elect to be executed by electrocution. Ala. Code § 15-18-82.1(a)–(b) (1975). Thus, pursuant to current Alabama law, an execution by either lethal injection or electrocution are the only two possible lawful methods of execution in Alabama. Defendants note that, if these two execution methods are held to be unconstitutional by the Alabama Supreme Court or the U. S. Supreme Court, then a death sentence may be carried out by "any constitutional method of execution." *Id*. § 15-18-82.1(c).

Because nitrogen asphyxiation is not an execution method authorized in the Code of Alabama, this method of execution would be unlawful unless (1) lethal injection and electrocution were declared unconstitutional, and (2) the statute was amended to authorize execution by nitrogen asphyxiation. Therefore, Defendants

submit that this method is neither feasible nor readily implemented.[10]  Defendants are correct.

The Eleventh Circuit has spoken on this issue, rejecting Eighth Amendment method-of-execution claims by Alabama death-row inmates proposing a firing squad as an alternative to Alabama's current method of execution.  *See Boyd v. Warden, Holman Corr. Facility*, 856 F.3d 853, 867 (11th Cir. 2017) (holding that prior precedent compelled it to hold that "Boyd ha[d] failed to carry his burden of pleading facts sufficient to plausibly suggest that execution by firing squad or hanging is feasible or readily implementable in Alabama." (citing *Arthur v. Comm'r, Ala. Dep't of Corr.*, 840 F.3d 1268 (11th Cir. 2016), *cert. denied sub nom. Arthur v. Dunn*, 137 S. Ct. 725 (2017), *reh'g denied*, 137 S. Ct. 1838 (2017)).  Likewise, Taylor cannot plausibly plead nitrogen asphyxiation as an alternative method of execution.[11]

---

[10]  Wilson acknowledges this fact, but he advises that Alabama's Senate recently voted 25-8 in favor of adding nitrogen hypoxia to the list of execution methods permitted under state law. As quoted by AL.com, Sen. Tripp Pittman (R-Montrose) said, "I think nitrogen hypoxia is a very humane way to implement [a death] sentence." http://www.al.com/news/index.ssf/2017/04/alabama_senate_votes_to_allow.html    Regardless, nitrogen hypoxia is currently not statutorily authorized in Alabama.

[11]  Of course, Wilson has three other alternatives in his remedial quiver, all of which have been used legally in executions in Alabama.

**B.      Eighth Amendment Consciousness Assessment Claim**

Wilson alleges that Defendants do not have an adequate method to ensure that he is properly anesthetized prior to the injection of the latter two drugs in the execution protocol, creating a substantial risk of unconstitutional pain, in violation of the Eighth Amendment.   Specifically, Wilson is referring to Defendants' consciousness assessment, which is performed after the administration of midazolam, but before the injection of rocuronium bromide and the potassium chloride.   Wilson's Eighth Amendment consciousness assessment claim has two prongs:  (1) he asserts that the consciousness assessment itself is constitutionally deficient because it is performed by a correctional officer who has received no medical training and is not capable of determining depth of anesthesia; and (2) Defendants have no plan for stopping an execution when an inmate remains conscious or sensate after receiving multiple doses of midazolam.

### 1.      *adequacy of procedures for assessing anesthetic depth*

Defendants submit that Wilson's claim regarding the general adequacy of the consciousness assessment should be dismissed for failure to state a claim upon which relief can be granted because the Eighth Amendment does not require the use of an anesthesiologist or medical equipment to assess depth of anesthesia in an execution. Defendants point out that in *Baze*, the Supreme Court rejected the Kentucky inmates' claim that "a professional anesthesiologist" was needed to help assess anesthetic

depth. 553 U. S. at 59. The *Baze* Court noted that, because the medical ethical guidelines prohibited an anesthesiologist from participating in capital punishment, the argument that an anesthesiologist was needed to provide a constitutional execution "is nothing more than an argument against the entire procedure." *Id.* Relying on *Baze*, Defendants submit that Wilson's nearly identical claim as the inmates' claim in *Baze* fails to state a plausible Eighth Amendment claim.

Defendants are correct. In *Baze*, the Supreme Court rebuffed the idea that the Eighth Amendment requires the "more sophisticated procedures" for assessing unconsciousness, as Wilson advocates. The *Baze* Court also held that Kentucky's consciousness assessment, which is similar to Alabama's, was not required under the Eighth Amendment. *Baze*, 553 U. S. 59–60. The Supreme Court reiterated this holding in *Glossip*, stating: "We recognized this point in *Baze*, where we concluded that although the medical standard of care might require the use of a blood pressure cuff and an electrocardiogram during surgeries, this does not mean those procedures are required for an execution to pass Eighth Amendment scrutiny." *Glossip*, 135 S. Ct. at 2742. Thus, even assuming the truth of Wilson's allegation that anesthesiologists in the medical context receive more training in determining anesthetic depth than ADOC personnel receive in the penological context of carrying out an execution, Wilson has failed to state a viable Eighth Amendment claim regarding the adequacy of the ADOC's consciousness assessment.

## 2. *no plan for stopping an execution-in-process*

Wilson further claims that Defendants have no plan for stopping an execution underway when an inmate remains conscious or sensate after receiving multiple doses of midazolam. This allegation is new to the midazolam claims filed to date. The allegation is based on reports from witnesses to the Christopher Brooks and Robert Bert Smith, Jr., executions suggesting that they may have been conscious at the time the last two drugs in the protocol were administered. Allegedly, Brooks's left eye opened after midazolam was administered and remained open throughout the execution, and it was reported that Smith opened his eyes, coughed, flailed, and heaved for several minutes after being given two doses of midazolam. Assuming that Brooks and Smith remained conscious after the midazolam was administered, Wilson contends they were subjected to an unconstitutional level of pain, in violation of the Eighth Amendment, upon injection of the last two drugs in the protocol.

Defendants deny Wilson's allegations based on hearsay that Brooks and Smith were insufficiently anesthetized by the midazolam and were conscious when the last two drugs were administered. Concerning the alleged eye-openings in the Brooks and Smith executions, Defendants note that if that happened, it could very well have resulted from lagophthalmos,[12] rather than from Brooks and Smith not

---

[12] Lagophthalmos—the failure of the eyelids to properly close—is such a common condition in surgeries in which patients undergo general anesthesia that medical studies suggest that patients' eyelids be taped shut to reduce the chance of corneal abrasion. *See e.g.*, Yatindra K.

being fully anesthetized. As to the inmates' alleged labored breathing and/or coughing after the administration of midazolam, Defendants point out that even at clinical doses, midazolam can depress respiration.[13] Therefore, Defendants counter that Wilson has failed to plead a plausible claim that (1) the use of midazolam is unconstitutional and (2) they have no plan to abort an execution if midazolam does not render an inmate unconscious prior to the administration of the last two drugs in the protocol.

It is not clear that this allegation arises to the status of a "claim," but the evidence alluded to is relevant to other claims and will be allowed. Given the early stage of this litigation, the court thus concludes that the better-reasoned course of action is to require Defendants to answer Wilson's complaint, respond to this allegation as a claim, and proceed with discovery. Defendants' response in opposition is better suited to be presented in a motion for summary judgment, and discovery will enable the court to decide whether a "claim" in fact exists.

---

Batra & Inder M. Bali, *Corneal Abrasions During General Anesthesia*, 56 ANESTHESIA & ANALGESIA 363–65 (1977); E. White & M.M. Crosse, *The Aetiology and Prevention of Peri-Operative Corneal Abrasions*, 53 ANAESTHESIA 157–61 (1998).

[13] The manufacturer's warnings accompanying midazolam state: "Intravenous midazolam hydrochloride has been associated with respiratory depression and respiratory arrest, especially when used for sedation in noncritical care settings. In some cases, where this was not recognized promptly and treated effectively, death or hypoxic encephalopathy has resulted." *Midazolam Injection*, DRUGS.COM, https://www.drugs.com/pro/midazolam-injection.html, at 1 (last visited July 30, 2017).

## C. First Amendment "Right of Access" Claim For Cell Phone Access

Wilson claims that Defendants' policy prohibiting visitors to the prison to witness his execution, including an inmate's counsel, from possessing or having access to a cell phone during the execution offends his "right of access" to the courts, in violation of the First and Fourteenth Amendments, as well as the Eighth Amendment right to be free from cruel and unusual punishment. (Doc. # 24 at 39-43.)

Defendants seek dismissal of this claim, pointing out this same claim was recently dismissed on a Rule 12(b)(6) motion[14] for failure to state a claim in *Arthur v. Dunn*, No. 2:16-cv-866-WKW (M.D. Ala. Apr. 12, 2017) (Doc. # 32, at 10-19); *affirmed*, *Arthur v. Commissioner*, 680 F. Appx 894 (11th Cir. 2017) (unpublished); *cert. denied*, *Arthur v. Commissioner*, No. 16-1408 (U. S. May 25, 2017). Defendants are correct; this same claim was addressed in *Arthur*.

Prisoners have a constitutional right to have meaningful access to the courts pursuant to the First and Fourteenth Amendments to the U. S. Constitution. *See Lewis v. Casey*, 518 U. S. 343, 347 (1996); *Bounds v. Smith*, 430 U. S. 817 (1977)

---

[14] Defendants' motion in *Arthur* to dismiss Arthur's "right of access" claim pursuant to Rule 12(b)(6) was based on three different grounds: (1) it was time-barred; (2) it failed to state a claim on the merits upon which relief can be granted; and (3) it was barred by laches. *See Arthur v. Dunn*, No. 2:16-cv-866-WKW (Doc. # 18). Granting Defendants' motion, the court concluded that Arthur's "right of access" claim was untimely and that it was also due to be dismissed pursuant to Rule 12(b)(6) for failure to state claim for which relief can be granted. *Arthur v. Dunn, supra* (Doc. # 32, at 10-19).

(holding that "inmate access [must be] adequate, effective and meaningful");

*Thaddeus–X v. Blatter*, 175 F.3d 378 (6th Cir. 1999). As stated in *Lewis*, "[i]t is for the courts to remedy past or imminent official interference with individual inmates' presentation of claims to the courts . . . ." *Lewis*, 518 U. S. at 349. In *Thaddeus-X*, the Sixth Circuit emphasized:

> . . . The importance of this right to incarcerated individuals is evident and can hardly be overstated:
>> The right to file for legal redress in the courts is as valuable to a prisoner as to any other citizen. Indeed, for the prisoner it is more valuable. Inasmuch as one convicted of a serious crime and imprisoned usually is divested of the franchise, the right to file a court action stands . . . as his most "fundamental political right, because preservative of all rights."

175 F.3d at 391 (quoting *Hudson v. McMillian*, 503 U. S. 1, 15 (1992) (Blackmun, J., concurring in the judgment)).

In evaluating a claim of denial of meaningful access to the courts, the court must "weigh[ ] the interests of the prison as an institution (in such matters as security and effective operation) with the constitutional rights retained by the inmates." *Thaddeus-X*, 175 F.3d at 390. *See also Turner v. Safley*, 482 U. S. 78, 89–91 (1987). To prove a claim, a prisoner must demonstrate "actual harm." *See Lewis*, 518 U. S. at 349 ("It is the role of courts to provide relief to claimants . . . who have suffered, or will imminently suffer, actual harm."). A prisoner must demonstrate "that a nonfrivolous legal claim had been frustrated or was being impeded." *Id.* at 353.

In support of his right-of-access claim, plaintiff Thomas Arthur relied on *Coe v. Bell*, 89 F. Supp. 2d 962 (M.D. Tenn. 2000), a death-penalty case where the condemned inmate, Robert Coe, sought declaratory and injunctive relief to enjoin the warden from prohibiting his counsel from having access to him during the last hour of his life and while witnessing his execution. Granting Coe partial injunctive relief, the district court stated:

> Plaintiff's right to meaningful access to the courts to assert that [Eighth Amendment] right requires that counsel have some access to the prisoner during the last hour before the execution and be permitted to witness his execution and have access to a telephone until execution has been successfully carried out.

*Coe*, 89 F. Supp. 2d at 966.

The defendant warden in *Coe* appealed the district court's order permitting Coe's counsel to witness the execution and have access to a telephone until the execution was completed. Regardless of the appeal, the execution proceeded, and Coe was executed. Subsequently, his counsel moved the Sixth Circuit to dismiss the appeal as moot. The Sixth Circuit granted the motion because the appeal was moot as it pertained to the district court's order granting injunctive relief, explaining: "Where an order appealed from is unreviewable because of mootness, the

appropriate thing for this court to do is to vacate the order." *Coe v. Bell*, 230 F.3d 1357 (Table), 2000 WL 1477441, *1 (6th Cir. 2000).[15]

Addressing this argument in *Arthur,* this court noted:

> Arthur is correct that since the district court's order granting injunctive relief in *Coe* was vacated, not reversed, it still may have persuasive value. Regardless, this court is not bound by the decision of a sister district court and is not inclined to follow suit. Although it granted injunctive relief, the district court in *Coe* had reservations about that decision: "This court is skeptical about a prisoner's realistic ability to assert and get redress for a violation of his right to be free from cruel and unusual punishment during the execution itself." 89 F. Supp. 2d at 966. For the reasons detailed *infra*, this court, too, has similar reservations about the propriety of granting injunctive relief similar to that granted in *Coe*. Those reservations, and the absence of any persuasive authority, compel denial of the injunctive relief requested.

*Arthur*, 2:16-cv-866-WKW (Doc. # 32 at 13.)

In addition to his reliance on *Coe*, Arthur also supported his right-of-access claim with reports that there were anesthesia problems with the Christopher Brooks and Ronald Bert Smith executions in 2016. Specifically, Arthur stated, "according to a witness, Mr. Brooks' left eye opened *after* the midazolam was administered and Mr. Brooks was supposed to have been fully anesthetized." (emphasis in original). (Doc. # 20 at 8.) As to the Smith execution, Arthur stated:

---

[15] In vacating the district court's order granting injunctive relief in *Coe*, the Sixth Circuit made no comment as to the merits of the district court's injunction. Arthur asserted that even though the order granting injunctive relief in *Coe* was vacated, it retained persuasive value. *See Friends of Everglades v. S. Fla. Water Mgmt. Dist.*, 570 F.3d 1210, 1218 (11th Cir. 2009) ("We are free to give statements in a vacated opinion persuasive value if we think they deserve it.").

> Witnesses to Mr. Smith's execution reported that Mr. Smith "clenched his fist after being given the first drug," and that he "was apparently struggling for breath as he heaved and coughed for about 13 minutes," in a botched execution that "lasted for more than half an hour."

(Doc. # 20 at 8-9.)

For the reasons explained in *Arthur*, 2:16-cv-866-WKW (M.D. Ala. Apr. 12, 2017) (Doc. # 32 at 13-16), this court was unpersuaded by Arthur's reliance on hearsay reports from the Brooks and Smith executions.[16] To reiterate, the events Arthur alleges occurred at these two executions scarcely indicate a denial of access to the courts. Arthur only suggested the Brooks's eye-opening episode, and the alleged significance of that information was only identified after the fact, when an expert was engaged.[17] The witness reports to which Arthur referred were not remotely "actionable."

In summary, Arthur did not show that the ADOC's policy prohibiting visitors, including an inmate's counsel, from having access to a cell phone and/or a landline telephone during an execution is a constitutional violation. Arthur failed to state a claim upon which relief can be granted. The same is true for Wilson. His "right of

---

[16] Specifically, execution witnesses in Alabama have no way of knowing when a lethal drug has been administered, including at every stage of a three-drug protocol. Telephone contact with a judge during an execution would thus be entirely futile.

[17] There is no expert testimony regarding the events alleged to have occurred at the Smith execution.

access" claim is due to be dismissed pursuant to Rule 12(b)(6) for failure to state a claim.

**D.      Fourteenth Amendment Claim Regarding Secrecy of Protocol**

Wilson claims that the exemption the ADOC enjoys from the rulemaking requirements concerning lethal injection, the unfettered discretion the ADOC has over the lethal injection protocol and procedures, and Alabama's failure to disclose its execution protocol to an inmate violate his Fourteenth Amendment due process rights in that he can never be certain of the protocol and procedures that will be employed when Alabama carries out a death sentence. (Doc. # 24 at 43-44.) Wilson contends that this "veil of secrecy" impedes his ability to litigate an Eighth Amendment challenge to the execution protocol because it prevents him from meeting his burden under *Baze* and *Glossip*. (*Id.* at 44.)

Defendants submit that, Wilson's "veil of secrecy" claim fails to state a plausible claim for relief and should be dismissed. In support of their argument, Defendants note both this court and the Eleventh Circuit repeatedly have rejected virtually the same claim raised by other death-row inmates. *See Valle v. Singer*, 655 F.3d 1223, 1237 n.13 (11th Cir. 2011); *Powell (Williams) v. Thomas*, 641 F.3d 1255, 1257–58 (11th Cir. 2011); *Powell (Williams) v. Thomas*, 784 F. Supp. 2d 1270, 1280 n.5, 1282–83 (M.D. Ala. 2011); *see also Grayson v. Allen*, 491 F.3d 1318, 1323–24 (11th Cir. 2007); *Jones v. Allen*, 485 F.3d 635, 640 n.3 (11th Cir. 2007).

Rejecting this same claim raised by Alabama inmate Jason Williams, this court and the Eleventh Circuit explained that, there is no authority supporting the proposition that a condemned inmate has a due process right to receive notice and an opportunity to be heard regarding changes to an execution protocol. *Powell (Williams)*, 641 F.3d at 1257–58; *Powell (Williams)*, 784 F. Supp. 2d at 1280 n.5, 1282–83; *see also Valle*, 655 F.3d at 1237 n.13 (reiterating the holding in *Powell (Williams)* and concluding that Florida's "failure to disclose [its protocol] is not unconstitutional"). Indeed, in *Powell (Williams)*, this court specifically held that a death-row inmate is not entitled to a copy of Alabama's lethal injection protocol, stating:

> Williams does not cite any authority from any court in Alabama—federal or state—that has required the state of Alabama to disclose its lethal injection protocol as a constitutional or other requirement, and the court is aware of no such authority. In fact, in the context of examining whether a condemned inmate unreasonably delayed in filing his § 1983 claim, the Eleventh Circuit has rejected the argument that the confidentiality of Alabama's lethal injection protocol precluded the inmate from filing his challenge to the method of execution any earlier. *See Grayson v. Allen*, 491 F.3d 1318, 1323 (11th Cir. 2007).

784 F. Supp. 2d at 1280 n.5. Affirming, the Eleventh Circuit characterized Williams's due process claim as an attempt "to avoid the legal prism typically used for analyzing similar Eighth Amendment claims." *Powell (Williams)*, 641 F. 3d at 1258. As in *Powell (Williams)*, Wilson's due process claim does not warrant any

relief.[18]  *See also Williams v. Hobbs*, 658 F.3d 842, 851–52 (8th Cir. 2011) (concluding that district court properly dismissed a § 1983 claim alleging the secrecy encompassed in Arkansas's lethal injection statute denied plaintiff's right of access to courts and violated the Due Process Clause, holding that plaintiffs' allegations failed to raise a plausible claim for relief).

Wilson failed to identify any authority establishing that he has a due process right to disclosure of Alabama's lethal injection protocol.  He mentions *Oken v. Sizer*, 321 F. Supp. 2d 658 (D. Md. 2004), *see* Doc. # 24 at 44 n.128, but *Oken* is neither controlling nor persuasive authority.  As another court explained, "this Court cannot rely on one district court's unsupported assertion that capital plaintiffs have such a due process right, especially in view of the fact that the United States Supreme Court vacated the stay of execution granted by the district court in *Oken*."  *Beaty v. Brewer*, 791 F. Supp. 2d 678, 685 (D. Ariz. 2011).  Given the lack of authority to support this claim, Wilson fails to state a cognizable claim for relief.  His argument

---

[18]  In *Powell (Williams)*, this court and the Eleventh Circuit addressed Williams's § 1983 claims in the context of his motion for a stay of execution. The procedural posture of that case had no effect on the courts' holdings that death row inmates have no due process right to disclosure of a state's lethal injection protocol. *See Powell v. Thomas*, 643 F.3d 1300, 1305 (11th Cir. 2011) (rejecting petitioner's attempt to distinguish *Powell (Williams)* on the ground that *Powell (Williams)* was decided on appeal from the district court's denial of motion for temporary stay of execution).  In *Powell (Williams)*, the courts addressed the merits of the due process issue; these holdings are equally applicable to Wilson's mostly identical claim.

that Alabama's failure to disclose its protocol prohibits him from litigating an Eighth Amendment claim ignores binding precedent.

Additionally, Wilson's claim is based on the faulty premise that the ADOC's failure to disclose Alabama's lethal injection protocol prohibits him from ascertaining the method of his execution and litigating an Eighth Amendment claim. These allegations are refuted by the detailed information regarding the protocol contained in his complaint. (*See* Doc. # 24 at 8–10.) Information regarding the ADOC's current protocol, such as chemicals to be injected, including the quantity, method, and order of administration, as well as other relevant procedures, including the consciousness assessment, is a matter of public record from pleadings and court orders in recent cases filed in this district court, such as *Arthur v. Dunn*, No. 2:11-cv-438-WKW (M.D. Ala. 2011) and the Midazolam Litigation, *Grayson v. Dunn*, No. 2:12-cv-316-WKW (M.D. Ala. 2012), among others. As evidenced from the present action, the information Wilson needs to challenge the method of execution under the Eighth Amendment is readily available to him. His claim otherwise has no merit.

Finally, Wilson argues that the ADOC may attempt to change its lethal injection protocol so close to his execution date that he will have no opportunity to be on notice of the changed protocol or challenge the method of his execution. He does not allege that such a scenario has ever occurred, and he has alleged no facts

indicating that such a scenario is even likely.  Presently, Wilson's allegations on this point are sheer speculation that Defendants may attempt some day to amend the protocol in a manner that will impose a substantial risk of serious harm to the inmates, and that Defendants may attempt to do so without any notice or opportunity for review of the changed execution protocol.  Being purely speculative, this claim is insufficient to state a colorable claim for relief and cannot overcome controlling precedent holding that death-row inmates have no due process right to disclosure of the state's lethal injection protocol.

For all of the above reasons, Wilson's Fourteenth Amendment claim regarding the "veil of secrecy" surrounding Alabama's execution protocol is without merit and fails to state a plausible claim for relief.  It is due to be dismissed.

## E.    Claim That Deviation From Protocol Violates Fourteenth Amendment

Wilson claims that the ADOC has failed to comply with its execution protocol and that such failure is a material deviation that violates his right to equal protection under the Fourteenth Amendment.  (Doc. # 24 at 44-46.)  This claim concerns the consciousness assessment[19] component of the ADOC's execution protocol. Specifically, Wilson claims that the ADOC failed to conduct the "pinch test" portion of the protocol at Eddie Powell's execution in 2011.  (*Id.* at 45.)   Wilson

---

[19] The consciousness assessment consists of three parts: (a) calling the inmate's name; (b) fluttering the eyelash; and (c) pinching the arm.  *See Arthur v. Dunn*, No. 2:11-cv-0438-WKW (M.D. Ala. 2011) (Trial Tr. vol. 1, 165-66.)

characterizes such failure as disparate treatment he claims burdens his fundamental right under the Fourteenth Amendment to the U. S. Constitution to be free from cruel and unusual punishment, as guaranteed by the Eighth Amendment.

As support for this claim, Wilson cites *Cooey v. Kasich*, 801 F. Supp. 2d 623, 652–53 (S.D. Ohio 2011), where the court found that "core deviations" from a state's written execution protocol could burden the inmate's "fundamental right" under the Eighth Amendment "to be free from cruel and unusual punishment" for purposes of a Fourteenth Amendment equal protection claim. *See also In re Ohio Execution Protocol Litig.*, 671 F.3d 601, 602 (6th Cir. 2012) (denying the State of Ohio's emergency motion to vacate the district court's order staying the execution based in part upon the district court's reasoning in *Cooey v. Kasich*, *supra*, that "the State should do what it agreed to do: in other words it should adhere to the execution protocol it adopted").

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U. S. 432, 439 (1989). To state a colorable equal protection claim, Wilson is required to show that: (1) "the State will treat him disparately from other similarly situated persons" and (2) the alleged disparate treatment interferes with a fundamental right, discriminates against

a suspect class, or is not rationally related to a legitimate government interest. *DeYoung v. Owens*, 646 F.3d 1319, 1327–28 (11th Cir. 2011).

As grounds for their motion to dismiss this claim, Defendants point out the same equal protection claim was litigated in *Arthur v. Dunn*, No. 2:11-cv-438-WKW (M.D. Ala. 2011), but that Arthur failed to prevail on this claim.[20] After weighing the testimony at the *Arthur* trial, the court found "that the evidence establishes that the pinch test was performed in all executions that the ADOC has conducted after the ADOC adopted the consciousness assessment and incorporated it as a mandatory part of the written execution protocol," including Eddie Powell's execution. *Arthur*, 2016 WL 1551475, at *22; *see id.* at *12–19 (recounting testimony). Defendants also note that Cary Grayson in the Midazolam Litigation raised the identical equal protection claim as Wilson's. *See Grayson v. Dunn*, No. 2:12-cv-316-WKW (M. D. Ala. 2012) (Doc. # 48 at 19 - 21). The court resolved this claim in *Grayson* in defendants' favor. *Id.*, Doc. # 239.[21] For these reasons, Defendants submit that because the court has already held as a matter of law that the ADOC did not deviate

---

[20] Arthur claimed that the ADOC failed to perform the pinch test in Eddie Powell's execution in 2011 and in Michael Jeffrey Land's execution in 2012. The court heard testimony from eyewitnesses to both executions. *Arthur*, *supra*, (Doc. # 359 at 27 – 43.)

[21] Grayson appealed the dismissal of this claim. *See Grayson v. Commissioner,* No. 17-11339 (11th Cir. 2017). On October 31, 2017, Grayson moved to voluntarily dismiss the appeal, but this motion remains pending. (*Id.*) Defendants' reliance on *Grayson* as support for the dismissal of Wilson's Fourteenth Amendment claim is premature.

from its protocol in the Powell execution, Wilson has failed to state a claim upon which relief may be granted, and this claim is due to be dismissed.

Contrary to Defendants' argument, Wilson's complaint plausibly states a Fourteenth Amendment equal protection claim that the ADOC deviated from the execution protocol by not performing the pinch test in the Eddie Powell execution. In the final analysis, Wilson may be unable to prove this claim, but he has plausibly stated this claim. Since no discovery has been conducted in this case, it is presently unknown whether Wilson's evidence to support this claim will be the same evidence that was presented in the *Arthur* trial, which was the same evidence on which the plaintiffs in the Midazolam Litigation relied, or whether Wilson will have different evidence to support this claim. In short, Defendants' motion to dismiss this claim for failure to state a claim is premature. It is due to be denied.

## F.    Claim Alleging Violation of Article III, Section 43 of the Alabama Constitution

Wilson claims that Alabama's capital punishment statutes, Ala. Code §§ 15-18-82 and 15-18-82.1 (1975) unconstitutionally delegate to the ADOC the authority to create the lethal injection protocol, in violation of Article III, Section 43 of the Alabama Constitution, which provides for the separation of powers among the executive, judicial, and legislative branches of Alabama's state governmental structure. (Doc. # 24 at 47-48.) Wilson asserts that Alabama's Legislature abdicated its legislative function by delegating unfettered authority to the ADOC to develop,

amend, and implement the execution protocol at will and without notice, effectively allowing the protocol to evade judicial review. *Id.*

Defendants have moved to dismiss for failure to state a claim under 42 U.S.C. § 1983. Defendants note that in the context of § 1983 actions, "liability is appropriate solely for violations of federally protected rights." *Almand v. DeKalb County*, 103 F.3d 1510, 1513 (11th Cir. 1997) (citing *Baker v. McCollan*, 443 U. S. 137, 145–46 (1979)). Defendants also point out that § 1983 does not create a substantive right; rather, "it merely provides a remedy for deprivations of federal statutory and constitutional rights." *Id.* at 1512; *accord Doe v. Sch. Bd. of Broward Cty.*, 604 F.3d 1248, 1265 (11th Cir. 2010). To state a claim under § 1983, a plaintiff must allege that the defendant violated a specific federal right. *See*, *e.g.*, *Doe*, 604 F.3d at 1265 ("[A] § 1983 plaintiff must allege a specific federal right violated by the defendant[.]"); *Griffin v. Opa-Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001) ("In order to prevail on a civil rights action under § 1983, a plaintiff must show that he or she was deprived of a federal right by a person acting under color of state law.").

Defendants acknowledge that since this court has jurisdiction over Wilson's claims arising under § 1983, it has the authority to exercise supplemental jurisdiction over Wilson's state-law claim.[22] *See* 28 U.S.C. § 1367(a). However, Defendants

---

[22] Defendants point out that Wilson does not cite, and the Defendants are unaware of, any case in which a federal court has exercised its supplemental jurisdiction to review a state law claim that a state's lethal injection statute violates a *state* constitution.

submit that, the court should decline to do so in this case because (1) Wilson's separation-of-powers claim raises a novel and complex issue of state law, *see* 28 U.S.C. § 1367(c)(1); and (2) this claim is not intertwined with Wilson's federal claims. Therefore, Defendants contend that this court, in its discretion, should not exercise supplemental jurisdiction over his state-law claim, *see* § 1367(c)(3), and dismiss Wilson's claim that Alabama's lethal injection statute violates the separation of powers clause of the Alabama Constitution.

In response, Wilson recognizes that it would require this court to exercise supplemental jurisdiction over this state law claim, but he proposes that since he claims that the Alabama Legislature improperly delegated its power to the ADOC *vis-à-vis* the details of conducting an execution, in the interests of judicial economy, this court should take supplemental jurisdiction over this claim.

A district court may decline to exercise supplemental jurisdiction over a supplemental state law claim if "the claim raises a novel or complex issue of State law." 28 U.S.C. § 1367(c)(1). In seeking assessment of the constitutionality of the Alabama legislature's delegation of its authority to the ADOC, Wilson places the court in the uncomfortable position of interpreting the Alabama Constitution's allocation of the State government's inherent powers, as opposed to asking the court merely to apply general principles of a well-developed body of state tort or contract law. Because comity counsels against federal interference in this novel and complex

state-law issue, the court declines to exercise supplemental jurisdiction over Wilson's state law claim. Thus, to the extent Defendants' motion to dismiss seeks dismissal of Wilson's Sixth Cause of Action (Doc. # 24 at 47-48), it is due to be granted.

## IV. CONCLUSION

For the reasons stated, it is ORDERED that Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. # 26) is GRANTED IN PART and DENIED IN PART, as follows:

1.      Defendants' Motion to Dismiss is DENIED with respect to Wilson's Eighth Amendment method-of-execution claim in Count 1 in that (a) Wilson has plausibly pleaded that the ADOC's execution protocol entails a substantial risk of severe pain, and (b) Wilson has plausibly pleaded three alternative methods of execution with either compounded pentobarbital, sodium thiopental, or midazolam in a single-drug execution.  Defendants' Motion to Dismiss Wilson's claim in Count 1 is GRANTED with respect to the fourth proposed alternative method of execution by nitrogen asphyxiation.

2.      Defendants' Motion to Dismiss is GRANTED with respect to Wilson's Eighth Amendment consciousness assessment claim (Count 2).

3.      Defendants' Motion to Dismiss is DENIED with respect to Wilson's claim in Count 2 that Defendants have no plan to stop an execution in progress.

4.  Defendants' Motion to Dismiss is GRANTED with respect to Wilson's First Amendment "right of access" claim for cell phone access (Count 3).

5.  Defendants' Motion to Dismiss is GRANTED with respect to Wilson's Fourteenth Amendment claim regarding the secrecy of the ADOC's execution protocol (Count 4).

6.  Defendants' Motion to Dismiss is DENIED with respect to Wilson's Fourteenth Amendment claim that the ADOC's deviation from the execution protocol violates his right to equal protection (Count 5).

7.  Defendants' Motion to Dismiss with respect to Wilson's state law separation-of-powers claim in Count 6 that Alabama's Legislature has unlawfully delegated its power to the ADOC regarding the execution protocol, in violation of Article III, Section 43 of the Alabama Constitution, is GRANTED, as this claim fails to state a claim for relief under 42 U.S.C. § 1983.  Pursuant to 28 U.S.C. § 1367(c)(1), the court declines to exercise supplemental jurisdiction over this state law claim.  This claim is DISMISSED WITHOUT PREJUDICE to Wilson's right to pursue this claim in state court.

DONE this 21st day of November, 2017.

/s/ W. Keith Watkins
CHIEF UNITED STATES DISTRICT JUDGE